SUBSEQUENT INJURY FUND v. PACK, ET AL.

[No. 428, September Term, 1967.]

*Decided June 5, 1968.*

The cause was argued before HAMMOND, C. J., and HORNEY, McWILLIAMS, FINAN and SINGLEY, JJ.

*Albert A. Levin* for appellant.

*Maurice J. Pressman,* with whom was *Richard W. Kupfer* on the brief, for appellee Lester Pack.

No brief filed for appellee State Accident Fund.

FINAN, J., delivered the opinion of the Court.

This case presents the question of whether the Subsequent Injury Fund has authority to appeal an order or an award of

the Workmen's Compensation Commission. Judge Sklar in the Baltimore City Court held that it did not. We affirm.

The Subsequent Injury Fund (Fund) was created by Chapter 809 of the Acts of Maryland 1963, codified as Code (1957) Art. 101, § 66 (1964 Repl. Vol.). Its purpose was to persuade the employer to employ the handicapped individual by limiting the liability, which the employer may otherwise have incurred, in the event the previously disabled or injured individual sustained a subsequent occupational injury, although not of itself disabling, but which, coupled with previous impairment, rendered the individual permanently disabled, thus exposing the employer to liability for the cumulative effect of the prior and subsequent injuries. By the terms of the statute, if the employee sustained a subsequent compensable disability but the cumulative effect of the disability and the prior disability resulted in a permanent total or permanent partial disability, the employer and his insurance carrier would only be liable for compensation payable by reason of the subsequent injury. The Subsequent Injury Fund, funded by assessments imposed upon employers and insurers, by statute, would contribute the balance of the total award, so that the sum of the two payments would equal the compensation provided by statute for the combined effects of both the previous disability and the subsequent injury. The custodian of the Fund is the State Treasurer, and the only statutory provision involving representation of the Fund states:

"(5) In any case which shall come before the Workmen's Compensation Commission involving payments from the Fund, it shall request the Attorney General to furnish a member of his staff to represent the Fund in hearings before it. * * *."

In the instant case the claimant was permanently disabled in his right hand at the time of the occupational injury to his left hand in 1965. On December 15, 1966 the Commission found that he had sustained a 50% loss of use of the left hand, which added to his prior permanent 75% loss of use of his right hand amounted to an overall 75% industrial loss of use of his body. Therefore, the Commission ordered the employer and its in-

surer to pay the claimant permanent partial disability not to exceed $20,000.

The insurer, alleging error of law, requested a rehearing, which was held on January 9, 1967, at which time the attorney for the Fund was requested to appear. The next day the Fund was impleaded and it later filed its issues.

On the basis of the January 9 hearing, the Commission passed a supplemental award of compensation on November 22, 1967, finding that the claimant had a prior 60% loss of use of his right hand and sustained a 50% loss of use of his left hand, which combined to produce a 70% industrial loss of use of his body. Under Art. 101 §§ 36(4) and (4a), the claimant would thus be entitled to a total of $18,680 compensation for permanent partial disability, which the Commission apportioned between the employer and the insurer on one hand and the Fund on the other. It ordered the employer and his insurer to pay $2,450 and the Fund to pay $16,230. An additional hearing was held on December 12, 1967 on the application of the claimant for a lump sum payment, which resulted in a lump sum award of $3,000 against the Fund.

The Fund, through its attorney, took appeals from the award of November 22 and the supplemental lump sum award, to the Baltimore City Court. The claimant moved to dismiss the appeals on the ground that the Fund was not a party authorized by statute to take an appeal from the Workmen's Compensation Commission. From the action of the lower court dismissing the appeals, the Fund has appealed to this Court.

The right to take an appeal is entirely statutory, and no person or agency may prosecute an appeal unless the right is given by statute. *Switkes v. John McShain, Inc.,* 202 Md. 340, 343, 96 A. 2d 617, 618 (1953) ; 2 Poe, *Pleading and Practice* ('Tiffany Ed. 1925), § 826. Furthermore, the Fund itself is merely a creature of the General Assembly, and as such, it enjoys only those powers conferred upon it by statute. It follows that if we can find legislative authorization, the Fund will be a proper party to appeal.

We do not believe the appellee would challenge the conclusion that the Fund, as a result of the Commission's order, has suffered a very substantial loss. In this respect, it differs from

certain agencies which we have held incapable of appealing from court decisions overruling their prior orders. See, *Board of Liquor License Commissioners v. Leone*, 249 Md. 263, 239 A. 2d 82 (1968) ; *Maryland Board of Pharmacy v. Peco, Inc.*, 234 Md. 200, 198 A. 2d 273 (1964) ; *Roeder v. Brown*, 192 Md. 639, 65 A. 2d 333 (1949) ; *Board of Zoning Appeals v. Mc-Kinney*, 174 Md. 551, 199 A. 540 (1938). In those cases, we held that the particular board — zoning, liquor or whatever, exercised a quasi-legislative or quasi-judicial function, and consequently maintained no legal interest in the determination which would justify its appeal. Unlike those agencies, the Subsequent Injury Fund does have a direct interest in the outcome of the hearing, *viz.* the Commission is authorized to award the claimant compensation from the Fund, which award might possibly be the result of an erroneous application of the Workmen's Compensation Law.

However, there is a very real distinction between being *aggrieved* by a decision, and having a status cognizable in law as able to present a grievance. The zoning board of Baltimore City, unquestionably, is a legal entity, yet, it suffers nothing by a decision overruling its orders. *Board of Zoning Appeals v. Mc-Kinney, supra.* By contrast, the Fund suffers a very real loss, but its right to appeal, and thus its existence as a legal entity, has not been formulated by the Legislature.

Art. 101, § 66(5) only provides for representation of the Fund before the Commission; it does not grant the Fund any right to appeal from an adverse ruling, nor grant such authority to the special attorney representing the Fund.

The argument is made, however, that by reading Chapter 1100 of the Rules of Procedure, titled Special Proceedings, Subtitle B, Administrative Agencies, Rule B3, pertaining to appeals, together with Art. 101, § 56, covering appeals from decisions of the Workmen's Compensation Commission, the right is conferred upon the Fund to appeal from an adverse ruling of the Commission. However, this is a "bootstrap" argument and we are of the opinion that the use of this stratagem fails to confer such right. Rule B3 provides: "An appeal may be taken by a person now or hereafter authorized by statute to appeal."

This automatically leads one to the relevant portion of the Workmen's Compensation Law, § 56, which states:

> "Any employer, employee, beneficiary or *person feeling aggrieved* by any decision of the Commission affecting his interest under this article, may have the same reviewed * * * in the common-law courts of Baltimore City * * *." (Emphasis supplied.)

The narrow question, therefore, is whether the Fund is a "person." It is actually nothing more than a glomerate of money, to be disbursed by the State Treasurer on written orders of the Commission. It is not supervised, maintained or protected by a governing board, which is given the authority to appeal, as is the Unsatisfied Claim and Judgment Fund. See, Code (1957), Art. 66½, §§ 150-179 (1967 Repl. Vol.). Nor is it an agency of the State, created and designated as such by the Legislature, as is the State Accident Fund. *See,* Code (1957), Art. 101, §§ 70-71 (1964 Repl. Vol.). It is not a commission, corporation, trustee or other artificially created "person."

We have discovered only one other case where the question of whether a fund was a "person" was raised. In *Commissioner of Taxation and Finance v. Barnard Bake Shops,* 274 App. Div. 317, 84 N. Y. S. 2d 366 (N. Y. App. 1948), the statute setting up a special Workmen's Compensation Fund was repealed in 1945. However, a saving clause provided that any right that accrued under the former law shall "continue to inure to the benefit of any persons affected thereby * * *." When the injury to the claimant occurred, the old law was still in effect, however he died after the repeal. The question was whether the fund, which would receive the award upon the claimant's death, had a vested right as a "person affected thereby." The Court rejected the claim stating, "Such a fund is merely the creation of legislation and the power that created it may destroy it without regard to vested rights or otherwise."

We are of the opinion that the reasoning of the New York appellate court is correct, and that the fund is not recognized in law as a "person."

In the argument before this Court the questions were raised as to whether the attorney to the Fund, on his own motion, could

take an appeal on behalf of the Fund, or whether the State Treasurer who is the statutory custodian of the Fund could take an appeal from the Commission's decision. We think *Switkes v. John McShain, Inc.,* 202 Md. 340, 96 A. 2d 617 (1953) renders such action by the attorney to the Fund a nullity. Regarding the State Treasurer, § 66 (2) of Art. 101 imposes upon him duties which are purely ministerial, charging him with keeping the surplus funds invested and further providing:

> "* * * The fund shall be disbursed by the Treasurer only for the purposes stated in this section, and shall not at any time be appropriated or diverted to any other use or purpose. * * *. Disbursement from the fund shall be made by the Treasurer only upon the written order of the Workmen's Compensation Commission."

We do not think the statute gives the Treasurer the right, nor places upon him the duty, to pass upon the legal merits of claims adjudicated by the Commission and awarded against the Fund. An award by the Commission is not the type or character of diversion of money from the Fund to which the statute makes reference and from which the Treasurer is charged with protecting the Fund.

Article VI, Section 3 of the Constitution of Maryland (1867), also imposes upon the State Treasurer certain duties and obligations regarding "moneys of the State" which he receives into his custody. However, the assessments paid into the Subsequent Injury Fund do not constitute "moneys of the State" as contemplated by Article VI and the duties incumbent upon the State Treasurer by this Constitutional provision are inapposite to this case.

The appellant strongly relied on the proposition that the State Accident Fund, an insurance carrier for employers, Code (1957), Art. 101, §§ 70-71 (1964 Repl. Vol.), although not given any specific statutory right of appeal from awards to this Court, does take such appeals, and sought to draw an analogy between it and the Subsequent Injury Fund. The appellant in urging this argument emphasized that for 27 years between

1914, when the Workmen's Compensation Act was enacted, and the passage of Chapter 504, Acts of Maryland 1941, creating the Commissioners of the State Accident Fund "as a State Agency," the State Accident Fund appeared as a party to many appeals and no question was ever raised as to its right to appeal a decision of the Commission. Without the benefit of accurate statistical support, we hasten to state that in the vast majority, if not in all, of these cases the State Accident Fund appeared in its capacity as an insurer of an employer, and the employer was the real party in interest, either as appellant or appellee. Certainly, since the passage of Chapter 504, Acts of Maryland 1941, the status which the "Commissioners of the State Accident Fund" enjoy as a State Agency affords an immediate distinction between it and the Subsequent Injury Fund. Chapter 504 also provided for a chairman of the State Accident Fund and delineated the duties and functions of the commissioners.

Recently, the State Accident Fund appeared as an appellee in this Court in *Pressman v. State Accident Fund,* 246 Md. 406, 228 A. 2d 443 (1967). In this case the Fund appealed to the Circuit Court of Baltimore County for an order of the Commission holding it liable for the payment of an award to the administrator of a deceased claimant, the Fund contending that its insurance policy with the alleged employer had been canceled. The Circuit Court reversed the Commission and the claimant's administrator appealed to this Court. The question of the State Accident Fund's right to appeal the award was never raised, nor has that issue ever been decided by this Court; nor do we intend now to elaborate on that question because that issue is not before us. We go no further than to state that the analogy which the appellant endeavors to draw between the State Accident Fund and the Subsequent Injury Fund is not persuasive.

Furthermore, the contention that exposing the Subsequent Injury Fund to inroads from awards by the Commission, without the right to appeal such decisions, violates the equal protection clause of the Fourteenth Amendment of the United States Constitution is specious, for the simple reason that the

Fund is not a person or legal entity cognizable under Maryland Law, to whom the equal protection clause would apply.

It should be borne in mind that the Legislature, if it were so minded, could have provided for the right of appeal on behalf of the Fund, as it has done with respect to the Unsatisfied Claim and Judgment Fund in Art. 66½, § 177A, which in part provides:

> "* * * any such final order, decree or judgment of court by which the Unsatisfied Claim and Judgment Fund or Board is aggrieved shall be appealable to the Court of Appeals in the manner provided by law and rule of court. (1962, ch. 49.)"

It may well be that the Legislature felt that providing the Subsequent Injury Fund with representation by an attorney from the staff of the Attorney General, at any hearing before the Commission in which the Fund was involved (Art. 101, § 66 (5)), afforded "due process" to the Fund and that an adjudication by the Commission upon such a hearing was intended to be final insofar as the Fund was concerned. Certainly, the language of the statute does not permit us to read into it the right of appeal on behalf of the Fund. If greater safeguards are needed to protect the Fund from invasion by unwarranted awards, it is within the province of the Legislature, and not the courts, to provide such protection.

For the reasons we have stated in this opinion, we affirm the orders of the lower court granting the claimant's motions to dismiss in both cases and its entering judgment in favor of the claimant in both cases.

*Orders and judgments affirmed, with costs.*